# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND MCGRAW, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-01459-TWP-MPB ) |
| CORIZON HEALTH, INC., PENDLETON CORRECTIONAL FACILITY, DUSHAN ZATECKY, MR. ALSIP, OFFR. EDWARDS, SGT. VANDINE, SGT. McKINNIE, CPT. MASON, MRS. FRANCUM, MRS. McCULLOUGH, DR. TALBOT, MRS. WELDERS, NURSE SIMPSON, and NURSE ROSE, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment. Plaintiff Raymond McGraw ("Mr. McGraw"), an inmate at Miami Correctional Facility, initiated this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his First and Eighth Amendment rights while he was incarcerated at Pendleton Correctional Facility ("Pendleton"). On March 4, 2019, Mr. McGraw moved for summary judgment. (Dkt. 151.) Thereafter, Defendant Officer Edwards opposed the Motion arguing that there is a dispute of material fact regarding the degree of force she used to secure Mr. McGraw when he refused to take medication on January 14, 2016. (Dkt. 200.) Defendants Corizon Health, Inc. ("Corizon"), Aleycia McCullough ("Ms. McCullough")Dr. Paul Talbot, Carrie Welders ("Ms. Welders"), Nurse Kim Simpson ("Nurse Simpson"), and Nurse Leah Rose ("Nurse Rose"), (collectively, "the Medical Defendants") responded and cross-motioned for summary judgment on May 3, 2019. (Dkt. 202.) Mr. McGraw

replied on June 6, 2019. (Dkt. 237.) For the reasons stated below, Mr. McGraw's Motion is **denied** and the Medical Defendants' Motion is **granted in part and denied in part**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court views the record in the light most favorable to the non-moving party and draws all reasonable

inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II. UNDISPUTED FACTS[1]

### A. Initial Matters

Before reciting the facts underlying Mr. McGraw's claims, the Court must address several issues that have made it difficult for the Court to determine the undisputed facts. First, Mr. McGraw (who is proceeding *pro se*) produced more than two thousand pages of exhibits with his Motion for Summary Judgment. (Dkts. 154-159.) While he attempts to identify documents to support his statement of material facts not in dispute, he does so by referencing medical entries from particular dates, rather than particular page numbers, making it difficult for the Court to locate his references.

---

[1] The Medical Defendants object to many statements in Mr. McGraw's Statement of Facts Not in Dispute as containing hearsay, speculation, legal conclusions, or improper expert testimony from a lay witness. The Court does not need to address those issues in this Order because none of the disputed testimony affects the outcome of the pending summary judgment motions. Disputes of material fact identified by the Court below come mainly from the Medical Defendants' own Statement of Material Facts and do not implicate any of Mr. McGraw's disputed statements.

The Medical Defendants' submissions do not fare much better. Some citations in the Medical Defendants' brief are incorrect, making it difficult for the Court to locate their referenced documents. For example, the Medical Defendants assert that Mr. McGraw submitted a healthcare request form on October 1, 2015. They cite docket "159, pp. 99" as the location of the healthcare request form, but p. 99 of docket 159 is a medical record dated November 20, 2015. The adjacent pages are part of that medical record.

In addition, the accuracy of the records submitted by the Medical Defendants', and therefore their statement of facts and expert's opinions that rely upon those records, are called into question by records from an outside neurosurgeon, Gautam Phookan, M.D. ("Dr. Phookan"), who also treated Mr. McGraw. For example, the Medical Defendants' records do not indicate on what date Mr. McGraw's staples were removed, but they do indicate that the staples were intact on September 23, 2015 and were not present on October 1, 2015. Dr. Talbot examined Mr. McGraw on October 12, 2015, and did not note the presence of staples. (Dkt. 158, p. 367.) The Medical Defendants note that Dr. Phookan charted on October 16, 2015, that Mr. McGraw's remaining staples were removed in his office that day. (Dkt. 158, p. 142.) But they fail to acknowledge that this creates a dispute of material fact regarding whether the Medical Defendants removed all of the staples on September 25, 2015, as instructed to do by Dr. Phookan, or at any other time before Mr. McGraw's follow-up with Dr. Phookan. Moreover, The Medical Defendants' expert witness, Dr. Craig Wilson, fails to acknowledge at all that the remainder of Mr. McGraw's staples were removed at Dr. Phookan's office on October 16, 2015. (Dkt. 196-7.) If Dr. Phookan removed staples from Mr. McGraw's back on October 16, 2015, then the prison medical records before that date which indicate that there were no staples in Mr. McGraw's back are called into question.

These issues leave the Court with little in the way of undisputed facts to draw from. Therefore, the following recitation of undisputed facts is rather truncated.

**B.      Undisputed Facts**

At all times relevant to his Complaint, Mr. McGraw was incarcerated at Pendleton. Corizon was the company that contracted with the Indiana Department of Correction to provide medical care to Indiana prisoners at all times relevant to this action. Dr. Talbot was a physician providing medical services at Pendleton. Nurse Simpson and Nurse Rose were licensed and qualified nurses at Pendleton. Ms. McCullough was the Health Service Administrator at Pendleton. Ms. Welders was a medical assistant at Pendleton. Ms. McCullough and Ms. Welders are not medically trained and do not perform any patient care duties.

Mr. McGraw suffered from chronic lower back pain. On September 14, 2015, he underwent an L3 to L5 decompressive laminectomy[2] at IU Health Ball Memorial Hospital performed by Dr. Phookan, a neurosurgeon with Goodman Campbell Brain and Spine. Mr. McGraw was discharged from the hospital on September 16, 2015, with instructions to remove the drain from the surgical site when it drained less than 40 ml in a 12-hour period, to remove staples on September 28, 2015, and to schedule a follow up appointment with the surgeon in four weeks.

When Mr. McGraw returned to Pendleton, Dr. Talbot ordered that he be housed in the medical unit to facilitate his post-operative recovery. The next day, September 17, 2015, Mr. McGraw had a fever of 101 degrees. Dr. Talbot ordered an injectable antibiotic.

Nurse Rose removed Mr. McGraw's drain on September 21, 2015, and he was discharged from the medical unit. Myra Wilson from Goodman Campbell Brain and Spine called the prison

---

[2] "Laminectomy is surgery that creates space by removing the lamina — the back part of a vertebra that covers your spinal canal. Also known as decompression surgery, laminectomy enlarges your spinal canal to relieve pressure on the spinal cord or nerves." *Laminectomy*, MayoClinic.org, https://www.mayoclinic.org/tests-procedures/ laminectomy /about/pac-20394533 (Last visited Aug. 30, 2019).

and left a message for Ms. Welders stating that Mr. McGraw's staples could be removed on September 25, 2015.

Many aspects of Mr. McGraw's care are disputed from September 21, 2015 through October 30, 2015, when Dr. Talbot determined that Mr. McGraw's wound was not healing, and he needed to be transferred to a facility with 24 hour nursing care.[3] Mr. McGraw returned to Pendleton on December 30, 2015. On January 14, 2016, Nurse Simpson attempted to administer two antibiotics to Mr. McGraw. He resisted because a previous dose of the same medications caused him to have physical reactions that indicated he might be allergic to them. Eventually, Officer Edwards restrained Mr. McGraw. Officer Edwards and Mr. McGraw dispute the nature an appropriateness of Officer Edwards' actions.

On January 15, 2016, Dr. Talbot examined Mr. McGraw, noted purulent drainage from his back wound, and ordered him to an outside hospital for further treatment. Doctors at St. Vincent Hospital in Anderson, Indiana, determined that Mr. McGraw was suffering from a spinal epidural abscess and Methicillin-resistant Staphylococcal Aureus ("MRSA"). He required additional surgery and was released to Miami Correctional Facility on January 20, 2016, where he received IV antibiotics for six weeks.

Mr. McGraw currently has no outstanding medical bills resulting from this incident.

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO OFFICER EDWARDS

Mr. McGraw has submitted sworn testimony that Officer Edwards rammed her knees into his stomach repeatedly on January 14, 2016. Officer Edwards has produced admissible evidence in the form of an affidavit stating that she only placed her left arm against Mr. McGraw's chest

---

[3] Material disputes of fact will be discussed in Section IV below.

and told him everything would be fine. These competing sworn statements create a dispute of material fact and Mr. McGraw is therefore not entitled to summary judgment against Officer Edwards.

The Court will analyze Mr. McGraw's Motion for Summary Judgment against the Medical Defendants in conjunction with their Motion for Summary Judgment below.

### IV. CROSS MOTIONS FOR SUMMARY JUDGMENT AS TO MEDICAL DEFENDANTS

#### A. Statute of Limitations

The Medical Defendants argue that Mr. McGraw's claims are barred by the statute of limitations because he was aware of his claims by at least October 10, 2015, and did not file his Complaint in state court until November 2, 2017. This argument completely ignores the docket in this case and the Court's first Entry which acknowledged that although the Complaint was filed in state court on November 2, 2017, Mr. McGraw had signed and dated the Complaint on March 28, 2017. The Court ruled that the prison mailbox rule applied and deemed the Complaint as filed on March 28, 2017. (Dkt. 5.) The Medical Defendants could have raised this issue in their Motion for Summary Judgment and challenged Mr. McGraw's assertion that he gave prison officials his Complaint for mailing on March 28, 2017. Instead, they asserted, in contradiction to the docket in this action, that the Complaint was filed on November 2, 2017. They have therefore waived this argument.

#### B. State Law Negligence Claims

The Medical Defendants argue that any state law negligence claims would be barred by the Indiana Medical Malpractice Act because Mr. McGraw has not presented his claims before the state medical review panel. Although Mr. McGraw used the word "negligence" in his Complaint, the Court did not include state law negligence claims in its screening entry and Mr. McGraw did

not address such claims in his summary judgment briefing. There are no state law negligence claims proceeding in this action.

**C.     Policy Claim Against Corizon**

Mr. McGraw alleged in his Complaint that Defendant Corizon was responsible for the repeated delays and failures in providing him with prescribed medications. Because Corizon acts under color of state law by contracting to perform a government function, i.e., running a correctional institution or providing medical care to correctional facilities, it is treated as a government entity for purposes of Section 1983 claims. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 fn.6 (7th Cir. 2002); *but see Shields v. Illinois Department of Correction*, 746 F.3d 782, 790 (7th Cir. 2014) (finding "substantial grounds to question the extension of the *Monell* holding for municipalities to private corporations").

To survive summary judgment on this claim, Mr. McGraw must produce evidence of "the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chi.*, 690 F.3d 829, 833–34 (7th Cir. 2012) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989)). Evidence of a failure to make a policy can also support such a claim. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). However, without an actual policy to point to, a plaintiff must produce evidence of multiple incidents of unconstitutional activity in order to maintain a claim against Corizon. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

Mr. McGraw has not produced a Corizon policy that expressly condones denying or delaying the provision of prescriptions drugs. Nor has he produced any evidence of other similar incidents. Although he submitted affidavits from fellow inmates, the affidavits all relate to Mr. McGraw's care. Mr. McGraw has alleged that his own medication was delayed three time

periods during his course of treatment. But even this is insufficient evidence of a widespread practice that rises to the level of a custom or policy. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 760 (7th Cir.2005) (three incidents do not amount to a widespread practice to support a custom or policy claim). The undisputed facts demonstrate that Mr. McGraw's policy and practice claim fails and that Corizon is entitled to summary judgment.

**D.     Deliberate Indifference Claims against Defendants Welders and McCullough**

Ms. Welders and Ms. McCullough have provided sworn testimony that they performed administrative duties at the facility, such as reviewing medical records to responding to grievances, and did not provide medical care. Mr. McGraw argues that Ms. Welders and Ms. McCullough should have examined him themselves instead of relying on his medical records, but he is mistaken. As non-medical administrators, Ms. Welders and Ms. McCullough were "entitled to defer to the judgment of jail health professionals so long as [they] did not ignore [Mr. McGraw]." *Berry v. Peterman*, 604 F.3d 435, 440-41 (7th Cir. 2010).

The undisputed facts show that Ms. McCullough reviewed Mr. McGraw's medical records in order to respond to his grievances. (Dkt. 196-4.) Ms. Welders provided sworn testimony that her interactions with Mr. McGraw consisted of forwarding his complaints to the medical personnel who had the authority to respond to them. (Dkt. 196-5.) Mr. McGraw asserts that his sister spoke to Ms. Welders and Ms. McCullough seeking help for her brother, but they did not assist her even after she filled out a release form. This alone does not create a dispute of material fact because Ms. Welders and Ms. McCullough were not constitutionally obligated to assist Mr. McGraw's sister, but instead to respond appropriately to his complaints, which they did. It was not within their power to alter the medical treatment he received. Therefore, Ms. Welders and Ms. McCullough are entitled to summary judgment.

### E. Retaliation Claims against Defendants Talbot, Rose, Welders and McCullough

Mr. McGraw alleges that Defendants Dr. Talbot, Nurse Rose, Ms. McCullough, and Ms. Welders retaliated against him for filing grievances and this case by transferring him and forcing him to pay his medical bills.

To succeed on a retaliation claim, a plaintiff must establish that: (1) he engaged in activity protected by the First Amendment; (2) defendants took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decisions to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Mr. McGraw cannot show that the Defendants were responsible for the alleged retaliatory actions.

First, the undisputed evidence shows that Dr. Talbot transferred Mr. McGraw to New Castle Correctional Facility ("New Castle") because that facility was better equipped to meet his medical needs. The evidence also shows that Dr. Talbot did not order Mr. McGraw to be transferred back to Pendleton. Instead, the treating physician at New Castle ordered Mr. McGraw's return to Pendleton when he no longer required medical care not available there.

Second, the undisputed evidence shows that Mr. McGraw does not owe any medical bills as a result of his back surgeries and follow-up treatment. He has not provided any evidence that he paid any medical bills associated with his care.

Mere speculation regarding the Defendants' motives cannot overcome the contrary evidence that no retaliatory actions were taken against him. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013). Therefore, Defendants Dr. Talbot, Nurse Rose, Ms. McCullough, and Ms. Welders are entitled to summary judgment on Mr. McGraw's retaliation claim.

## F. Deliberate Indifference Claims against Defendants Talbot and Rose

### 1. Serious Medical Condition

The Medical Defendants argue that Mr. McGraw has not complained of a serious medical condition because he complains about a surgical site infection while the MRSA he was eventually diagnosed with was not found at the surgical site but instead in an epidural abscess in his spine: "Plaintiff's eventual diagnosis at St. Vincent Hospital was an internal infection in his spine, not at the incision site." (Dkt. 202, p. 12.)

The Medical Defendants do not dispute that the spinal abscess, or internal infection, may be a serious medical condition, but they assert that Mr. McGraw has only complained of an infection at his surgical site and since he never had such an infection, he has not raised a serious medical condition. They go on to compare Mr. McGraw's "self-diagnosed surgical site infection" to having "the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue." (Dkt. 202, p. 57) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)). Yet, in the same paragraph, they state than a skin infection could be a serious medical condition if it were a "purulent draining infection" accompanied by extreme pain and high fever (again quoting *Gutierrez*, 111 F.3d at 1373), but fail to acknowledge the medical records in this case that reflect that the drainage from Mr. McGraw's wound was at times described as "purulent" and that he suffered from pain and some fever.

The Medical Defendants' arguments are frivolous. There is no doubt that the Medical Defendants were adequately notified of the nature of Mr. McGraw's claims by his Amended Complaint which stated that after back surgery, his surgical wound did not close, and he experienced pain and an infection. The Medical Defendants do not dispute that Mr. McGraw was treated for MRSA, which is an infection. The fact that the infection was not on his skin at the site

11

of his incision, but very nearby in his spine is not dispositive of his claims. MRSA can be life-threatening, so comparing it to the sniffles is absurd. The subject of Mr. McGraw's Complaint is his post-surgery care including the wound that failed to close and the abscess that developed in his spine. There is no question that he has raised a serious medical condition.

2.  **Deliberate Indifference – Disputes of Material Fact**

As discussed above, several disputes of material fact exist surrounding the removal of Mr. McGraw's staples. The parties dispute when they were removed, by whom, and under what conditions. On September 23, 2015, Nurse Harmon changed Mr. McGraw's dressing and charted that the incision site was clean and that his staples were intact. Mr. McGraw testifies that Nurse Rose removed some, but not all, of the staples on September 25, 2015, in an unsanitary room. There is no charting of the removal of his staples and Nurse Rose does not recall this event. Charting on October 1, 2015, states that the staples had been previously removed. But Dr. Phookan's records show that he removed remaining staples on October 16, 2016.

Next, although the parties agree that Mr. McGraw at times used toilet paper to pack his wound, they dispute the reason for his actions. Mr. McGraw asserts that he had to resort to packing the wound with toilet paper because the wound was draining and the dressing was not changed frequently enough, and he was not given the proper supplies to change the dressing himself. The Medical Defendants assert that Mr. McGraw did not need to pack the wound with toilet paper and that doing so may have contributed to the problems that later developed.

But Dr. Phookan's post-surgery instructions stated that if there was any drainage from the wound, then the dressing should be changed two to three times per day. (Dkt. 158, p. 263.) The medical records demonstrate that his wound drained less than 30 cc on September 21, 2015, when he was released from the prison medical unit. There is no evidence indicating whether Dr. Talbot

ordered daily dressing changes either by a nurse or by Mr. McGraw. The dressing was changed on September 23, 2015, and Nurse Harmon noted that the staples were intact and the surgical site was clean. There is no evidence that Mr. McGraw was seen by any medical staff between then and October 1, 2015, after he submitted two health care request forms, one of which stated that he was using toilet paper to pack the wound. Mr. McGraw reports that Nurse Rose removed his staples on September 25, 2015, but there is no other evidence to confirm that or document whether his wound was draining at that time.

The nurse who changed his dressing on October 1, 2015, noted some clear drainage. If the Medical Defendants had followed Dr. Phookan's instructions, they would have instituted dressing changes two to three times per day. (*See* Dkt. 158, p. 263.) Instead, the dressing was not changed for two days when Nurse Harmon changed it on October 3, 2015. She noted a small amount of yellowish drainage. Still, no one attempted to change the dressing again until October 8, 2015, when medical records state that Mr. McGraw refused to come to the medical unit for treatment. There is a dispute of material fact as to whether Dr. Talbot was deliberately indifferent when he discharged Mr. McGraw from the prison medical unit without either instructions for daily dressing changes by medical staff or instructions and supplies for Mr. McGraw to change his own dressing.

Finally, there is a dispute of material fact as to whether Mr. McGraw's medications, both antibiotics and pain medications, were delayed causing him additional pain and allowing an infection to either arise or worsen. For example, on September 18, 2015, Dr. Talbot ordered three days of injectable antibiotics followed by ten days of the antibiotic Keflex. On September 21, 2015, Dr. Talbot again prescribed Keflex to be taken three times per day. Mr. McGraw states that he did not receive the three days of injectable antibiotics. Medical records show that he did not receive the Keflex until September 25, 2015. Mr. McGraw also asserts that he did not receive any

13

antibiotics between October 5, 2015 and October 30, 2015, and between December 30, 2015 and January 14, 2016. The records also show that Mr. McGraw made several requests for pain medication that he asserts was not provided as ordered by Dr. Phookan.

For these reasons, the Medical Defendants' Motion for Summary Judgment is **denied** as to Dr. Talbot and Nurse Rose. After reviewing the medical records which revealed the factual disputes discussed above, Nurse Rose, Dr. Talbot, and their counsel should have considered whether they had a good-faith basis to argue that no issue of material fact precluded the Court from finding that they were entitled to judgment as a matter of law. *See Warren v. Corizon Inc.*, No. 2:17-CV-00116-JMS-MJD, 2017 WL 5290577, at *6 (S.D. Ind. Nov. 13, 2017).

### 3. Failure to Protect Claim against Nurse Simpson

Mr. McGraw's sworn testimony is that Nurse Simpson watched and did nothing as Officer Edwards kneed Mr. McGraw in the stomach repeatedly. Nurse Simpson's affidavit merely states that she has no recollection of Officer Edwards applying excessive force to Mr. McGraw or forcing Mr. McGraw to take medication. Again, Nurse Simpson and her counsel should have considered whether they could argue in good faith that there is no dispute of material fact as to Mr. McGraw's claim against Nurse Simpson given the dispute of fact created by Mr. McGraw's sworn statement. A lack of memory of an incident does not entitle a defendant to summary judgment.

## V. CONCLUSION

Mr. McGraw's Motion for Summary Judgment, (Dkt. [151]), is **DENIED**. The Medical Defendants' Motion for Summary Judgment, (Dkt. [202]) is **GRANTED in part and DENIED in part.** It is **granted** as to the following claims that are dismissed:

- First Amendment retaliation claims against Defendants Dr. Talbot, Nurse Rose, Ms. Welders, and Ms. McCullough;

- Eighth Amendment deliberate indifference claims against Defendants Ms. Welders and Ms. McCullough; and

- Eighth Amendment policy or practice claim against Corizon.

The Motion is **denied** as to the following claims that shall proceed:

- Eighth Amendment deliberate indifference claims against Defendants Dr. Talbot and Nurse Rose; and

- Eighth Amendment failure to protect claim against Defendant Nurse Simpson.

- Eighth Amendment excessive force claim against Officer Edwards shall also proceed. Because all claims against them have been dismissed, the **Clerk is directed to terminate** Corizon, Ms. Welders, and Ms. McCullough as defendants on the docket.

The Magistrate Judge is requested to reset this matter for settlement conference.

**SO ORDERED.**

Date: 9/4/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Raymond McGraw, #883037
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adriana Katzen
BLEEKE DILLON CRANDALL ATTORNEYS
adriana@bleekedilloncrandall.com

Daniel F. Rothenberg
INDIANA ATTORNEY GENERAL'S OFFICE
daniel.rothenberg@atg.in.gov

Destiny Reve Scott Wells
INDIANA ATTORNEY GENERAL'S OFFICE
destiny.wells@atg.in.gov

Jessica A. Wegg
SAEED & LITTLE LLP
jessica@sllawfirm.com


Magistrate Judge Matthew P. Brookman