# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND MCGRAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-01459-TWP-MPB |
| ) | |
| EDWARDS, Officer, TALBOT, Doctor, KIM ) | |
| SIMPSON, Nurse, and ROSE, RN, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON MEDICAL DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S EXPERT

This matter is before the Court is Defendants Talbot, Simpson, and Rose's (the "Medical Defendants") Motion to Exclude Certain Expert Testimony of Plaintiff's Expert Dr. Andrew Bernard ("Dr. Bernard"). (Dkt. 339.) Specifically, the Medical Defendants seek to exclude Dr. Bernard from rendering an opinion or testifying as to Plaintiff Raymond McGraw's ("McGraw") 1) credibility or state of mind; 2) spinal epidural abscess; 3) development of Methicillin-resistant Staphylococcus aureus (MRSA); and 4) legal conclusions regarding deliberate indifference. For the reasons explained below, the Motion is **granted in part and denied in part**.

## I.      BACKGROUND

McGraw's Eighth Amendment deliberate indifference claims against Defendants Dr. Talbot and Nurse Rose; Eighth Amendment failure to protect claim against Defendant Nurse Simpson and Eighth Amendment excessive force claim against Officer Edwards are scheduled for trial on August 5, 2021. McGraw was an inmate at the Pendleton Correctional Facility in 2015. Dr. Talbot was a physician providing medical services at Pendleton at that time, Nurse Simpson and Nurse Rose were licensed and qualified nurses at Pendleton. On September 14, 2015, McGraw

underwent an L3 to L5 decompressive laminectomy at IU Health Ball Memorial Hospital. He was discharged from IU Health Ball Memorial Hospital on September 16, 2015 and returned to Pendleton. The provision of post-surgical medical care provided to McGraw while at Pendleton are at issue in this lawsuit.

Dr. Bernard is a Professor of Surgery at the University of Kentucky's College of Medicine and the Medical Director of Trauma and Acute Care Surgery for the healthcare system associated with the University of Kentucky. (Dkt. 373-1.) He is a double board-certified physician in general surgery and surgical critical care and has been licensed since 1996. *Id*.

In his expert report, based upon McGraw treatment records and the facts of the case, Dr. Bernard opined that:

1. This man had a wound infection from late September until completion of his anti-microbial therapy after the second operation.

2. Skin dehiscence and drainage from the surgical incision were characteristic findings of a wound infection that should've been readily apparent to the care team at the facility.

3. The report by the prisoner that he had ongoing drainage that required toilet paper as a dressing was strong evidence of a wound infection. The continued drainage, the fact that he had to place toilet paper on his wound to capture the drainage, and the fact that the prison staff asserted that there was not significant infection all collectively likely contributed to this man's dismay.

4. The absence of erythema around the incision did not exclude a wound infection and that fact should've been apparent to any individual giving reasonable attention to the prisoner/patient.

5. Antimicrobials do not provide any significant prophylaxis for infection of open surgical wounds. In addition, the antimicrobials that were given were largely ineffective against the likely organism causing this man's infection, [MRSA].

6. The fact that operative cultures at the time of a second operation grew [MRSA] should be no surprise. From the operative note at the second operation, it is clear that his initial skin incision tracked down to the subcutaneous tissues and facia to the epidural space where the operating surgeon found evidence of long-standing infection. This is evidence of the fact that either he had an initial

    infection which was necessitating out through the skin wound or his early dehiscence created the opportunity for colonization and then infection which extended down through the open tissue planes to the level of the epidural space.

7. Drainage of the epidural abscess followed by an anti-microbial therapy effective against MRSA (vancomycin) eradicated this man's infection problem. If anti-microbial therapy with vancomycin had been instituted earlier, it is my opinion that [h]is draining sinus would likely have closed and that the subsequent operation would likely have been avoided.

8. I agree with the allegation of deliberate indifference. I agree with the plaintiff[']s allegation that referral was delayed. I agree with the plaintiff[']s allegation that transfer out to a hospital for evaluation was delayed. It's my opinion that this delay contributed to extension of his infection down to the epidural space and the requirement of a second operation.

9. Regarding antimicrobial therapy and infection control, the rocephin given on 9-17-15 was not an appropriate drug for a surgical site [infection]. The patient needed regular cleansing of the surgical site with antibacterial soap as basic postoperative skin care, especially with the skin dehiscence of the surgical incision and the opening where the drain had been removed. The patient should not have been expected to change his own dressing without being given the tools and some support. The prisoner was reportedly administered an anti-microbial active against MRSA, Bactrim, on 10-31-15. However, he continued to have drainage. This is evidence of a more serious infection and the failure to act after this therapy failed is further evidence of indifference.

(Dkt. 373-3 at 1-2.)  The report also includes Dr. Bernard's responses to Dr. Craig Wilson's affidavit. The Medical Defendants move the Court to exclude certain expert testimony of Dr. Bernard, because his opinions do not meet the standard articulated under *Daubert*.

## II. STANDARD FOR ADMISSIBILITY OF EXPERT WITNESS TESTIMONY

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

3

Fed. R. Evid. 702. The rule requires "evidentiary relevance and reliability" of expert testimony, with the focus on "principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). "The district court acts as a 'gatekeeper' in determining the relevance and reliability of the opinion testimony, and enjoys 'broad latitude' in making such a determination." *United States v. Moshiri*, 858 F.3d 1077, 1083 (7th Cir. 2017) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

"[T]he district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017). "[T]he key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion[.]" *C.W. v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (internal citations and quotations omitted).

Under the first step of the analysis, a witness is qualified based on their "knowledge, skill, experience, training or education." Fed. R. Evid. 702.

Under the second step of the analysis, "the court must determine whether the expert's testimony reflects scientific knowledge; that is, the court must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (citing *Daubert*, 509 U.S. at 592-93).

> *Daubert* provides several guideposts for determining reliability. These guideposts examine (1) whether the scientific theory has been or can be tested; (2) whether the theory has been subjected to peer-review and/or academic publication; (3) whether the theory has a known rate of error; and (4) whether the theory is generally accepted in the relevant scientific community.

4

*C.W.*, 807 F.3d at 835.  "In some cases it may also be appropriate to examine … whether there is too great an analytical gap between the data and the opinion proffered."  *Id.* (internal citations and quotations omitted).  "Ultimately, there are many different kinds of experts, and many different kinds of expertise.  The test of reliability, therefore, is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case."  *Gopalratnam*, 877 F.3d at 780.

Under the third part of the *Daubert* analysis, the court determines whether the proposed expert testimony will assist the "trier of fact in understanding the evidence or in determining a fact in issue."  *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002).

### III.  DISCUSSION

The Medical Defendants ask the Court to exclude Dr. Bernard's expert testimony as to four topics pursuant to Federal Rule of Evidence 702 and the *Daubert* standard.  The Court will address each one in turn.

#### A.  Testimony Regarding Plaintiff's Credibility or State of Mind

The Medical Defendants argue that Dr. Bernard's opinions "merely parrot what Plaintiff told him".  (Dkt. 339 at 11.)  If true, such opinions would be improper because "[v]ouching for a lay witness is not expert testimony."  *Nunez v. BNSF Ry. Co.*, 730 F.3d 681, 684 (7th Cir. 2013) (citing *United States v. Vest*, 116 F.3d 1179, 1185 (7th Cir. 1997)).  But the Court disagrees with the Medical Defendants' characterization of Dr. Bernard's expert report.  His report appears to be based on his experience as a general and critical care surgeon and his review of the records in this case.

The Medical Defendants object to Dr. Bernard's "attempts to classify Plaintiff as a vulnerable individual in 'dismay' with his medical care".  *Id.* at 12.  But as McGraw's counsel responds, the Medical Defendants themselves elicited Dr. Bernard's testimony regarding his view that prisoners

5

are vulnerable when they asked him at his deposition why he agreed to serve as an expert in this case. To avoid this testimony at trial, the Medical Defendants can simply refrain from asking Dr. Bernard that question and object if McGraw's counsel attempts to elicit such a response from Dr. Bernard.

The Medical Defendants also object to Dr. Bernard's statement in his report that several factors likely contributed to the McGraw's "dismay". (Dkt. 373-1 at 1, ¶ 3.) The Medical Defendants characterize this as an improper statement of McGraw's perception of his medical care. McGraw's counsel has represented that he does not intend to elicit from Dr. Bernard at trial any testimony regarding how McGraw perceived his medical condition. (Dkt. 373 at 11.)

The Medical Defendants' motion to exclude testimony regarding McGraw's credibility or state of mind is **denied as unnecessary.**

B.     **Testimony Regarding McGraw's Spinal Epidural Abscess**

The Medical Defendants seek to exclude Dr. Bernard's opinions regarding McGraw's spinal epidural abscess. They argue that he lacks the "education, experience, or expertise in diagnosing or treating this condition." (Dkt. 339 at 13.) As the Medical Defendants note, "courts impose no requirement that an expert be a specialist in a given field." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016) (quoting *Gayton v. McCoy*, 593 F.3d 610, 618 (7th Cir. 2010).) Dr. Bernard testified at his deposition that he has cared for patients with spinal epidural abscesses, although alongside a neurosurgeon who was treating the abscess. (Dkt. 339-1 at 16.) He also testified generally about post-operative care and post-surgical infections. *Id*. at 10-16.

Dr. Bernard is qualified to testify regarding McGraw's spinal epidural abscess, Dr. Bernard's reasoning is scientifically sound, and his testimony will assist the jury in understanding the evidence and determining the facts at issue in this case. The Medical Defendants

can test his opinions through cross examination at trial. The Medical Defendants' motion to exclude testimony regarding McGraw's spinal epidural abscess is **denied**.

### C. Testimony Regarding Plaintiff's Development of MRSA

The Medical Defendants seek to exclude Dr. Bernard's opinions regarding McGraw's development of MRSA. They argue that Dr. Bernard has assumed that "about 50% of prisoners have MRSA" and that his assumption is speculative and not based on any specialized experience. (Dkt. 339 at 16.) McGraw responds that Dr. Bernard testified at his deposition that 50% of the community—not the prison population—is colonized with MRSA, and that crowded prison environments increase the prevalence of MRSA. (Dkt. 373-2 at 40.) These statements are not "ordinary assumptions and speculation." (Dkt. 339 at 16.) Dr. Phookan, McGraw's surgeon, testified similarly at his deposition. (Dkt. 383-1 at 16.)

Dr. Bernard is qualified to testify regarding McGraw's development of MRSA, Dr. Bernard's reasoning is scientifically sound, and his testimony will assist the jury in understanding the evidence and determining the facts at issue this case. The Medical Defendants can test his opinions through cross examination at trial. The Medical Defendants' motion to exclude testimony regarding McGraw's development of MRSA is **denied**.

### D. Testimony of Legal Conclusions Regarding Deliberate Indifference

The Medical Defendants seek to exclude Dr. Bernard's opinions that amount to legal conclusions regarding whether Defendants were deliberately indifferent. McGraw agrees that experts are precluded from opining on the legal question of whether defendants are deliberately indifferent. (Dkt. 373 at 16.)

"When an expert offers an opinion relevant to applying a legal standard such as [deliberate indifference], the expert's role is 'limited to describing sound professional standards and

7

identifying departures from them.'" *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (quoting *West v. Waymire,* 114 F.3d 646, 652 (7th Cir. 1997)).

As the Medical Defendants' motion is unopposed on this ground, it is **granted** to the extent that no expert testimony will be permitted as to legal conclusions regarding deliberate indifference. Expert witnesses will be permitted to testify consistent with *Jimenez*.

## IV. CONCLUSION

The Medical Defendants' Motion to Exclude Certain Expert Testimony of Plaintiff's Expert Dr. Bernard, (Dkt. [339]), is **GRANTED to the extent that** no experts will be permitted to testify as to legal conclusions regarding deliberate indifference. It is **DENIED** in all other respects.

**SO ORDERED.**

Date: 8/5/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Raymond McGraw, #883037
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
Westville, Indiana  46391

Daniel Joseph Layden
WILLIAMS BARRETT & WILKOWSKI, LLP
dlayden@wbwlawyers.com

Adriana Katzen
BLEEKE DILLON CRANDALL ATTORNEYS
adriana@bleekedilloncrandall.com

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL'S OFFICE
adrienne.pope@atg.in.gov

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL'S OFFICE
archer.rose@atg.in.gov

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

9

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

10